NITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

v.

Antonio Caddell,

　　　　Defendant.

_____/

Case No. 26-20097

Hon. Terrence G. Berg

### United States's Response to Defendant's Motion to Revoke Detention Order

Magistrate Judge Elizabeth Stafford ordered Antonio Caddell, aka "42cheese," a validated member of Hustle Boys/42 street gang in Detroit, detained on a record reflecting not only a defendant caught with over 11 kilogram of methamphetamine, but a self-identified "gangster" who boasted about being a "dopeman," "trapper," and "jitter man" with multiple stash houses and a drug network spanning multiple states, and two rivals allegedly murdered at his direction. Throughout, Caddell documented his own criminality on his rap videos — flaunting his drug trafficking, machinegun-converted firearms, and contempt for federal law enforcement.

The record has only grown stronger since. Law enforcement has developed substantial additional evidence, including fingerprint and DNA analysis directly tying Caddell to multiple stash houses where narcotics and firearms, including a machinegun-converted firearm, were recovered, and Caddell now stands convicted

of a drug trafficking offense carrying a maximum term of imprisonment of ten years or more. That conviction is itself dispositive: under 18 U.S.C. §§ 3143(a)(2), the Court "shall" detain Caddell unless he can establish one of two narrow conditions for release — which he cannot. Caddell's motion should be denied.

## Factual Background

**I.      Instant Offense – July 2024 Controlled Delivery of Over 11 KG Meth**

In July 2024, Homeland Security Investigations intercepted a UPS package addressed to "S.S." at a residence on Monsbrook Drive in Sterling Heights, containing over 11 kilograms of methamphetamine.



The following day, law enforcement conducted a controlled delivery. After the package was left on the porch, Caddell arrived at the residence along with two other adults. One individual retrieved the parcel and placed it into an Uber ordered

by Caddell. When officers executed the warrant, Caddell attempted to flee but was quickly detained. He was found in possession of multiple pills, approximately $5,600 in cash, and three cell phones. Caddell himself admitted he had previously lived at the Monsbrook address.

A review of Caddell's phones seized on that day directly tied him to the shipment and the residence, revealing a screenshot of the UPS tracking information for the intercepted package, messages coordinating payment of utilities for the Monsbrook property, and communications with family members responsible for the lease and utility account. Investigators also confirmed that Caddell exchanged messages with an associate in which they discussed the Monsbrook address, shared photos of suspected narcotics, and referenced obtaining samples.

II.   **Investigation Revealed Caddell's Entrenched Involvement in Drug Trafficking and Violent Gang Activity**

*May 2024:* Two months before the controlled delivery, Caddell had posted a rap video titled "Fent Baby" on YouTube,[1] in which he appeared with a gas mask resting on his head while displaying large amounts of cash. The accompanying lyrics boast about carrying firearms, acting as a "shooter" rather than a "driver," engaging in drug trafficking, and committing robberies. The lyrics threaten that continued interference will "get [someone] killed," reference handling "seals and

---

[1] https://www.youtube.com/watch?v=n_VHzjj4EUY (last accessed Mar. 20, 2026).

blocks and all that ice and pills," describe manipulating narcotics ("putting a whooping on that blow"), and include explicit mentions of evading the DEA and federal agents. Caddell also highlights the presence of machinegun-converted firearms, characterizing the environment as a "rumble in the jungle" where they "keep thumping until the fed comes," and concludes by asserting that he is a "trapper" — a drug trafficker — not a "rapper."

*January 2025:* Less than five months after the controlled delivery, Caddell posted a video titled "Dopeman"[2] to YouTube, in which Caddell self-identified as the "Dopeman," whom others call a "jitter man" — a top-level drug supplier — and not merely a "middleman." The lyrics reference the movement and concealment of large quantities of narcotics ("stuffed that brick in them new cargo"), distributing "rocks" (a known term for methamphetamine), "cook[ing]" narcotics, and the ability to spend large sums of cash ("100k ain't nothing") on "buttons," a well-known term for machinegun conversion devices. He boasts access to high-capacity drum-magazine weapons ("gun drum"), makes direct threats to use ammunition designed to inflict serious bodily injury ("hit you with dumb dumb"), mocks rival gang members who are being killed or arrested ("subtracted"), claims an expansive distribution territory of "20 blocks," and taunts law enforcement for trying to stop him.

---

[2] https://www.youtube.com/watch?v=ZHJOtqz-6Z4 (last accessed Mar. 20, 2026).

Despite the substantial cash and assets displayed in his videos and recovered by law enforcement from his residences, records from the Michigan Department of Treasury confirm that Caddell had not filed taxes in years.

***February 2025 – French house search***: A month after the release of the "Dopeman" video, law enforcement executed a search warrant at a residence on French Road after observing references to it as a stash location on Caddell's phone, noting heavy traffic and short-stay visits, and confirming Caddell's presence at the location. Agents seized over two kilograms of substances containing fentanyl, fentanyl analogue, and methamphetamine, along with cash, multiple firearms including stolen firearms, drug-processing equipment, and a receipt for $1,400 in designer goods addressed to "Chedda," a known alias of Caddell.







Caddell's fingerprint was recovered from a blender containing fentanyl residue, and evidence from the search further linked additional individuals — whose fingerprints were found on drug paraphernalia — to Caddell's distribution network, which extended into Kentucky and Tennessee. One of those individuals has since been charged in Tennessee, and in a stop days before Caddell's arrest, his vehicle was observed at one of Caddell's stash house locations, which was subsequently searched in December 2025 and yielded drugs and a machinegun.

*June 2025 – "I got that"*: Four months after the search of the French house, Caddell posted the video "I Got That,"[3] depicting him in the company of associates displaying gang signs, with multiple firearms openly visible — including at least one appearing to be equipped with a machinegun conversion device. The lyrics reference Caddell's identity as a "gangster," past and intended acts of violence including shootings and targeted assaults, possession and trafficking of narcotics including "blow," "snow," and "ice," transportation of drugs across state or national borders, possession of firearms with "switches" and readiness to use them against rivals, boasting about prior attempts to kill rivals, conducting surveillance on rival residences using associates including women to gather intelligence, and large-scale drug distribution ("500 the top up to a brick").

---

[3] https://www.youtube.com/watch?v=9zfxnXd65Zo (last accessed Mar. 20, 2026).

*August 2025 – Gang war intensified*: The investigation's findings took on greater urgency in August 2025, when a known rival gang member — whose nickname "five six" is referenced in the "Dopeman" video — was murdered in a targeted shooting involving a machinegun. An associate sent Caddell a photograph of the victim.

 

A series of shootings followed as part of an intensifying gang rivalry. Law enforcement subsequently received a tip that Caddell had paid Ryan London — a multi-convicted felon who has recently pleaded guilty to a firearm offense in this district  — to carry out the murder. Images and text messages recovered from Caddell's phones corroborate their association.

Less than two weeks later, another rival gang member — also referenced by name in "Dopeman" as "Mello" — was shot on a highway while in a vehicle with his partner, a five-year-old child, and a driver. Law enforcement received a tip that

Caddell had paid another associate to carry out that shooting as well, corroborated by social media communications confirming that associate's ties to Caddell.

Two days after that (on August 21, 2025), law enforcement searched London's residence and located a machinegun used in one of the summer shootings in the possession of another gang associate. That firearm had been reported stolen by an associate of Caddell who had been arrested during the February French Road search. On the day of that search, Caddell instructed associates to switch phones.



***August 23, 2025 – "Last Straw":*** Later that month, Caddell posted the video "Last Straw,"[4] in which, he openly references large-scale drug trafficking, ordering killings, narcotics possession, and concern about informants. The lyrics reinforce Caddell's self-portrayal as a long-time drug trafficker operating from the "slums," identify his gang as "big 4" or 42, reference shooting rivals ("you get shot at, I give ghosts"), describe his ability to conceal communications used to arrange killings or

---

[4] https://www.youtube.com/watch?v=OHJ76DnWCAQ (last accessed Mar. 20, 2026).

drug orders involving fentanyl or methamphetamine, and reference associates caught with "100 bows couple pistols," and "they got me scared to do a sale." He describes manufacturing and processing narcotics "in the kitchen like a chef," "mix[ing] that fenny with that death," and producing product fresh "out that press." He acknowledges making substantial illicit proceeds — and when advised to invest legitimately, he expressed a preference to instead purchase "a thousand pounds of meth."

*August 29, 2025 – Armed Traffic Stop:* Days later, Caddell was stopped driving a bulletproof vehicle near the funeral of a shooting victim in the gang war. Multiple firearms were recovered from the vehicle, including one in plain view on the floor beside him.



*September 2025 – Roosevelt house search*: In September 2025, law enforcement executed a search warrant at the Roosevelt address, identified in a tip

as one of Caddell's machinegun stash houses. Officers recovered over 300 grams

of fentanyl, drug-processing tools including a press, blenders with powder residue,

a loaded stolen pistol, and a driver's license belonging to the associate arrested

during the February French Road search.





Location data from Caddell's phone placed him in the area daily in the period leading up to the search, Lyft records confirmed his presence at the residence two days prior. Caddell's fingerprint was also recovered from a plastic baggie alongside narcotics.

Item 0004:                 One evidence tape-sealed clear plastic evidence bag containing:
                           A: One clear plastic sandwich bag
                           B: One clear plastic sandwich bag
                           C: One clear plastic ziplock bag
                           D: One clear plastic FoodSaver bag
                           E: Suspected narcotics

**LABORATORY # 25-1827 (Request Number 0001)**

Item 0004:                 A: Processed for latent prints and ridge structure was developed (Latent L1).
                           B: Processed for latent prints and no ridge structure of comparable value was developed.
                           C: Processed for latent prints and no ridge structure of comparable value was developed.
                           D: Processed for latent prints and no ridge structure of comparable value was developed.
                           E: Not processed.

**Analysis Results:**

Item L1:                   Entered into the Automated Fingerprint Identification System (AFIS) at the state level with a possible subject developed. Compared to known finger impressions and identified to Antonio Tony Caddell, SID ████████

***December 2, 2025 – Multiple Residence Searches:*** On December 2, 2025, ATF and HSI executed five federal search warrants at locations associated with Caddell, recovering four firearms across three sites. At one of those locations, Caddell was present when agents arrived, and a Glock Model 43X recovered from that location yielded DNA analysis providing very strong support that Caddell is a contributor.



| 148 | 25-2871_8 | Gun swabs - Item 135 |
| --- | --- | --- |

The DNA profile obtained from this item indicates a mixture of at least four individuals with at least one male contributor. Antonio Caddell could not be ruled out as a possible contributor to this mixed DNA profile.

The DNA profile obtained from this item is approximately 30 quadrillion times more likely if the sample originated from Antonio Caddell and three unknown persons than if it originated from four unknown persons. This analysis provides very strong support for the proposition that Antonio Caddell is a contributor to the DNA profile obtained from the sample.

At a separate residence on Kilbourne in Detroit — unoccupied at the time of the search — agents recovered approximately 800 grams of a mixture testing positive for methamphetamine, fentanyl, and despropionyl fentanyl in various

packages, along with drug-processing paraphernalia, a stolen Glock Model 21

Gen4 equipped with a machinegun conversion device, and an additional firearm.

Three gas masks were also recovered. The presence of wet baggies, a recently-used

kilo press, and the suspected fentanyl and methamphetamine mixture indicated that

narcotics had been processed at the location shortly before the search.

 



 

Timing data from Caddell's phone confirmed his presence at the Kilbourne address the night before the warrant was executed, and remote-controlled video surveillance reflected that while several individuals came and went during that period, one individual consistently remained at the residence — consistent with Caddell's phone location data. DNA analysis of all three gas masks provides very strong support, with a likelihood ratio of at least 1,000,000, that Caddell is a contributor to those profiles.

| 151 | 25-2871_9.1 | Gas mask swab - Item 10 |
| --- | --- | --- |

The DNA profile obtained from this item indicates a mixture of at least three individuals with at least one male contributor. Antonio Caddell could not be ruled out as a possible contributor to this mixed DNA profile.

The DNA profile obtained from this item is approximately 120 quadrillion times more likely if the sample originated from Antonio Caddell and two unknown persons than if it originated from three unknown persons. This analysis provides very strong support for the proposition that Antonio Caddell is a contributor to the DNA profile obtained from the sample.

| 151 | 25-2871_9.2 | Gas mask swab - Item 11 |
| --- | --- | --- |

The DNA profile obtained from this item indicates a mixture of at least two individuals with at least one male contributor. Antonio Caddell could not be ruled out as a possible contributor to this mixed DNA profile.

The DNA profile obtained from this item is approximately 26 quadrillion times more likely if the sample originated from Antonio Caddell and one unknown person than if it originated from two unknown persons. This analysis provides very strong support for the proposition that Antonio Caddell is a contributor to the DNA profile obtained from the sample.

15

| 151 | 25-2871_9.3 | Gas mask swab - Item 12 |
|-----|-------------|-------------------------|

No blood was indicated on this item.  The DNA profile obtained from this item indicates a mixture of at least three individuals with at least one male contributor.  Antonio Caddell could not be ruled out as a possible contributor to this mixed DNA profile.

The DNA profile obtained from this item is approximately 8.5 quadrillion times more likely if the sample originated from Antonio Caddell and two unknown persons than if it originated from three unknown persons. This analysis provides very strong support for the proposition that Antonio Caddell is a contributor to the DNA profile obtained from the sample.

Among the evidence recovered from Caddell's phone during the December search was a note below.



This note references law enforcement escalation to the federal level and describes concealing "switches" — machinegun conversion devices — ahead of anticipated raids. The note references firing a "fully" automatic weapon on "repeat" with "double clips," uses shooting-related language throughout including "blicc,"

16

"clap," and "catch a body every other week," and includes the line "how you fell wit all these bodies and ain even took no peal!" — referencing multiple homicides and declining a plea. The note identifies Caddell's gang — "Big 4" or 42 — as "notorious shoot shit up," closes with a detailed description of a shooting victim: "hit em in his head his eyes open but his body still," suggesting first-hand familiarity with the violence his operation has generated.

## III.   Criminal History

In 2011, Caddell was convicted of Assault with a Dangerous Weapon and Felony Firearm. The charges arose when Gang Squad officers responded to investigate a shooting and observed a large group of men gathered near the scene. Caddell and another individual broke from the group and fled. One officer observed Caddell discard an object while running and recovered a loaded .38 caliber handgun at that location. During the pursuit, a second officer was within two feet of Caddell when Caddell produced a .32 caliber revolver and fired one shot in the officer's direction. The officer was able to grab and disarm him. Caddell then resisted violently, striking and kicking the officer multiple times before being subdued and arrested. He was sentenced to two to four years' incarceration for felonious assault, with a consecutive two-year term for felony firearm. Caddell was discharged from parole in 2016.

While on parole, Caddell was charged with armed robbery, home invasion, felon in possession, felony firearm, larceny in a building, and assault with a dangerous weapon. The charges were ultimately dismissed after the complaining witness failed to appear, and Caddell was not convicted. The underlying allegations, however, describe a violent armed home invasion in which a victim was held at gunpoint while her home was ransacked.

## IV.    Procedural History

On December 4, 2025, Magistrate Judge Stafford ordered Caddell detained pending trial, finding by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person or the community. Caddell was subsequently charged by Information with Possession of 500 Grams or More of Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii), an offense carrying a mandatory minimum of ten years and a maximum of forty years' imprisonment. (ECF No. 16). On March 11, 2026, Caddell pleaded guilty to that charge pursuant to a Rule 11 plea agreement. (ECF No. 25).

## <u>Discussion</u>

## I.    Detention Is Mandatory under the Bail Reform Act.

As Caddell has pleaded guilty and stands convicted, the Court is required to consider release under the standards for release pending sentencing under 18

U.S.C. § 3143, not the framework applicable to newly charged defendants under 18

U.S.C. §3142. Section 3143(a)(2) provides:

> The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of [18 U.S.C. § 3142(f)(1)] and is awaiting imposition or execution of sentence be detained unless—
>
> (A)
>
> > (i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
> >
> > (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; *and*
> >
> > (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. § 3143(a)(2) (emphasis added).

Caddell stands convicted of an offense described in 18 U.S.C. §

3142(f)(1)(C) — an offense under the Controlled Substances Act carrying a

maximum term of imprisonment of ten years or more — and awaits sentencing.

(ECF Nos. 25, 26). Consequently, detention is mandatory unless the conditions of

*both* subsections (A) and (B) of section 3143(a)(2) are met.

As to subsection (A), Caddell pleaded guilty pursuant to a Rule 11 plea

agreement, no motion for acquittal or new trial has been made or is likely to be

granted, and the government has not recommended a sentence of no imprisonment. Because Caddell cannot satisfy subsection (A), the Court need not reach subsection (B). Should it do so, however, Caddell fails that requirement as well.

## II.   Caddell Has Not Established By Clear And Convincing Evidence That He Is Not A Danger To The Community.

The Court need not reach dangerousness — mandatory detention under 18 U.S.C. § 3143(a)(2) is dispositive. Should it do so nonetheless, the record compels the same result.

To obtain release, Caddell must establish by clear and convincing evidence that he is not likely to flee or pose a danger to any other person or the community. 18 U.S.C. §§ 3143(a)(1), (a)(2)(B). He bears that burden. Fed. R. Crim. Proc. 46(c); *United States v. Williams*, 70 F.4th 359, 366 (6th Cir. 2023) ("Courts have concluded that § 3143 places the burden on the defendant because the section 'presumes dangerousness' and requires that [the defendant] 'overcome this presumption.'") (quoting *United States v. Vance*, 851 F.2d 166, 168 (6th Cir. 1988)).

Caddell's motion makes no attempt to address or rebut the numerous grounds underlying the Magistrate Judge's initial detention order. Instead, his motion dismisses the government's evidence as a "gossamer, flimsy web of tips, inferences from garden variety rap songs, claimed links to ill-defined others, speculation and inferences." (ECF No. 20, PageID.79). That characterization is

20

irreconcilable with the record. The evidence against Caddell is not speculation — it is a convergence of physical evidence, digital records, surveillance, forensic analysis, and corroborated tips that collectively establish what Caddell's own videos advertise: a dangerous, large-scale drug trafficker entrenched in violence and responsible for pumping lethal narcotics into the community. That record is deepened by a criminal history marked by firearms offenses and violent conduct — including discharging a weapon at a police officer.

Caddell points to the Pretrial Services recommendation of home confinement as support for release. (ECF No. 20, PageID.78). That recommendation does not establish non-dangerousness. Pretrial Services operates on limited information provided by Caddell and available at the time of its report; it does not conduct criminal investigations, evaluate the credibility of corroborated tips, or assess the full scope of a defendant's criminal network. Critically, the report predates Caddell's guilty plea — it was prepared when Caddell still stood as a presumptively innocent defendant, not as a convicted drug trafficker facing a mandatory minimum of ten years. The Magistrate Judge, after hearing the full government proffer, rejected that recommendation and ordered detention. That judgment was well-founded, and Caddell's subsequent guilty plea has only strengthened the case for continued detention.

21

Caddell's motion falls far short of the clear and convincing evidence standard required to demonstrate that he does not pose a danger. A blanket dismissal of the government's evidence — without engaging a single search warrant, a single fingerprint or DNA result, or a single corroborated tip — is not a showing. It is an abdication. That failure, combined with his guilty plea to a drug trafficking offense carrying a ten-year mandatory minimum, forecloses release. Even if the Court were to reach the dangerousness inquiry under 18 U.S.C. § 3143(a)(2)(B), Caddell has wholly failed to carry his burden.

## Conclusion

Caddell's conviction subjects him to mandatory detention, and he has failed to establish either condition that would permit release. Even if the Court were to conduct an independent dangerousness analysis, the record — spanning eighteen months, multiple stash houses, multiple firearms, corroborated murder-for-hire allegations, and kilograms of fentanyl and methamphetamine to be pumped into the community — compels the same result. His motion should be denied.

Respectfully submitted,

JEROME F. GORGON, Jr.
United States Attorney

/s/ Nhan Ho
Assistant United States Attorney

Date:  March 20, 2026

22

**CERTIFICATE OF SERVICE**

I certify that on March 20, 2026, I electronically filed the Government's response with the Clerk of the Court of the Eastern District of Michigan using the ECF filing system, which will send notification to all counsel of record.

s/Nhan Ho
Nhan Ho
Assistant United States Attorney

23